**DETROIT POLICE OFFICERS ASSOCIATION, Plaintiff,**

v.

**Coleman YOUNG, et al., Defendants.**

**William MORGAN, Brian Brunett, and Donald Prince, Individually and as Representatives of a Class, Plaintiffs,**

v.

**Coleman A. YOUNG, et al., Defendants.**

**Civ. A. Nos. 74–71838, 75–71376.**

United States District Court,
E.D. Michigan, S.D.

June 10, 1991.

Allan Sobel, Southfield, Mich., Nancy Jean Van Lopik, Grosse Pointe Park, Mich., for plaintiff, Detroit Police Officers Ass'n.

John Brady, Detroit, Mich., for plaintiff, Morgan.

Dennis Burnett, Assistant Corp. Counsel, City of Detroit Law Dept., Detroit, Mich., Barry Goldstein, Oakland, Cal., James Andary, Detroit, Mich., Daniel Edelman, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' JOINT MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This action has been remanded to this court by the United States Court of Appeals for the Sixth Circuit. The sole issue before this court is whether the voluntary affirmative action plan used by the Detroit Police Department to promote patrol officers to the rank of sergeant is "reasonable," and thereby, narrowly tailored to meet the compelling interest of the Department of eliminating the effects of past discrimination against blacks. *Detroit Police Officers Association (DPOA) v. Young ("DPOA II")*, 824 F.2d 512 (6th Cir.1987). Plaintiffs filed a joint motion for summary judgment November 30, 1990. Defendants filed a motion for summary judgment December 7, 1990. On January 15, 1991, plaintiffs and defendants filed responses to the respective opposing parties' motions for summary judgment. Defendants filed a reply to their motion for summary judgment January 31, 1991. Oral argument was heard April 10, 1991, before The Honorable Paul V. Gadola, United States District Court Judge. For the reasons set forth below, plaintiffs' joint motion for summary judgment will be denied, and defendants' motion for summary judgment will be granted.

## STATEMENT OF FACTS [1]

Plaintiffs, the Detroit Police Officers Association ("DPOA") and three white police officers suing on behalf of a class, brought suit in 1974 challenging the constitutionality of the Detroit Police Department's program of affirmative action for promotions to sergeant. This program is a portion of the measures undertaken by Detroit's Board of Police Commissioners in 1974 seeking to increase black representation at all levels of the Department and thereby eliminate the remaining effects of many years of intentional discrimination against blacks in hiring and promotion within the Department.

The record of intentional discrimination against blacks in the Detroit Police Department—in hiring, in the ranks, and in promotion—was recounted in fact findings by The Honorable Damon Keith in *Baker v. City of Detroit*, 483 F.Supp. 930 (E.D.Mich. 1979), *aff'd sub nom., Bratton v. City of Detroit*, 704 F.2d 878 (6th Cir.1983), *modified*, 712 F.2d 222 (6th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984) (*"Baker/Bratton"*). That suit, brought by white police personnel and the Detroit Police Lieutenants and Sergeants Association, challenged affirmative action promotions to the rank of lieutenant. As set forth below, the findings made in *Baker/Bratton*, including the findings regarding the occurrence and the extent of the Department's past discrimination, have been held by the court of appeals to operate as collateral estoppel in this case. *DPOA II*, 824 F.2d at 513.

The program at issue here—like the lieutenants' program involved in *Baker/Bratton*—has been in operation since 1974. Under the program, promotions to sergeant rank are made according to a one-for-one, black/white implementing ratio. Except as provided by the program, promotions to the sergeant rank are made from a rank-ordered eligibility list of all candidates who achieve a passing score on a written examination which is administered periodically by the Department. Rank on the list is determined by a combination of several factors, including the written test, an oral board interview, performance reviews, college education, seniority and veterans preference. The one-for-one ratio envisions that, to the extent qualified black candidates are available, at least 50% of the persons promoted in each instance when promotions are made will be black. *Baker*, 483 F.Supp. at 963–65; *DPOA v. Young ("DPOA I")*, 608 F.2d 671, 681–82 (6th Cir.1979), *cert. denied*, 452

---

[1] The Statement of Facts is taken, with some revision, from the Memorandum in Support of Defendants' Motion for Summary Judgment.

U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981). The program has an end goal, established by the Board of Police Commissioners in 1979 shortly after the court of appeals' decision in *DPOA I,* of 50% black representation at each rank. At the point when black representation at the sergeant rank reaches 50%, the use of race-conscious measures will cease.

In *DPOA II,* the Sixth Circuit held that the findings of prior discrimination supporting the lieutenants' program were preclusive here with respect to all "specific issues that were, in fact, decided" in the *Baker* case. *DPOA II,* 824 F.2d at 517. However, the Sixth Circuit held that the findings upholding the particular terms of the lieutenants' program were not preclusive of possible, distinct issues as to whether the program for promotions to sergeant was also "narrowly tailored." *Id.* The appellate court remanded this case for a determination of whether the particular terms of the Department's remedial program for promotions to the sergeant rank are narrowly-tailored to Detroit's recognized, compelling interest in eliminating the remaining effects of past discrimination.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-

movant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the exist-

ence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

■ The Department's affirmative action plan consists of a one-for-one implementing ratio until a 50% end goal is met. In other words, one black patrol officer will be promoted to sergeant for each white officer so promoted until the sergeant rank is made up of an equal number of black and white sergeants. The plan will then terminate.

To determine whether the Department's plan is reasonable this court must examine several factors, including: the necessity of the relief and the efficacy of alternate remedies; the flexibility and duration of relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of relief on the rights of third parties. *United States v. Paradise*, 480 U.S. 149, 171, 107 S.Ct. 1053, 1066, 94 L.Ed.2d 203 (1987). These factors have been followed in reviewing race-conscious remedies in the context of court decrees and voluntary programs. *Davis v. City and County of San Francisco*, 890 F.2d 1438 (9th Cir. 1989) (upholding race-conscious relief in consent decree); *Howard v. McLucas*, 871 F.2d 1000 (11th Cir.1989) (upholding race-conscious relief in court decree); *Chicago Fire Fighters v. Washington*, 736 F.Supp. 923 (N.D.Ill.1990); *United States v. Miami*, 51 FEP Cases 1608, 1990 WL 130005 (S.D.Fla.1990) (upholding race-conscious promotional relief in consent decree). Application of these factors to the present case confirms that the Department's affirmative action plan was reasonable.

### A. Necessity for Relief and Efficacy of Alternatives

The court of appeals has held that the Department had a compelling interest in remedying past discrimination against blacks. *DPOA II*, 824 F.2d 512. Hence, there is no dispute that some plan of action was necessary.

This court finds that no viable alternatives to this plan have been offered. Plaintiffs suggest that black officers could be tutored in order to score higher on the promotional model, including the written test. A tutorial program, providing it could pass constitutional muster, would hardly rectify the racial discrimination which prevailed in the police department between 1943 and the plan's institution in 1974. Therefore, this court finds the plan necessary, particularly in the absence of viable alternatives.

### B. Flexibility and Duration of Relief

The one-for-one implementing ratio is flexible. In *Paradise* the United States Supreme Court determined that the plan at issue in that case was flexible because, "[t]he requirement may be waived if no qualified black candidates are available." 480 U.S. at 177, 107 S.Ct. at 1070. The plan in the instant case has an identical waiver provision. Plaintiffs make no allegations that the black officers who benefit from this plan are unqualified. The Supreme Court later emphasized, "[t]he basic limitation, that black troopers promoted must be qualified, remains." *Id.* at 183, 107 S.Ct. at 1073.

The *Paradise* court also found that plan flexible because it "applies only when the Department needs to make promotions. Thus, if external forces, such as budget cuts, necessitate a promotion freeze, the Department will not be required to make gratuitous promotions to remain in compliance with the court's order." *Id.* at 177–178, 107 S.Ct. at 1070. Likewise, the instant plan applies only when the Department needs to make promotions.

Plaintiffs assert that the duration of the plan, covering over sixteen years, renders it unconstitutional. It does not. In order to achieve the 50% end goal, a 50/50 implementing ratio would have to be in effect for a number of years. If the Department had opted for a ratio with a higher number of blacks than whites promoted, the end goal would have been achieved sooner. Evidently, the Department chose to achieve its end goal at the slower pace; and in so doing, no white officers lost rank in order

to make room for a greater number of black officers. The Department also notes that a slow rate of attrition has contributed to the longevity of the relief plan. Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, p. 15.

In addition, the parties agree that this plan will terminate as soon as the sergeant rank is comprised of an equal number of black and white officers. Therefore, the plan is temporary. The court finds this plan reasonable in its flexibility and duration.

### C. Relationship of Numerical Goals to Relevant Labor Market

The end goal of 50% black sergeants must be reasonably related to the percentage of blacks in the relevant labor market. When special qualifications are required to fill a particular job, the relevant statistical pool is the number of persons qualified to undertake that job, not the general population. *Chicago Fire Fighters v. Washington*, 736 F.Supp. at 929–930.

In the present case the relevant labor market consists of officers and investigators in the Department, as they comprise the pool of candidates from which sergeants are promoted. According to the most recent figures submitted to the court, there are approximately 50% black officers and investigators. Hence, the court finds that the Department's 50% end goal is sufficiently related to the number of black officers in the relevant labor market.

### D. Impact of Relief on Third Parties

Plaintiffs complain that as a result of this affirmative action plan, 291 white officers have been passed over for promotion to sergeants between 1974 and 1989 strictly on the basis of their race. Plaintiffs' Brief in Support of Motion for Summary Judgment, p. 18. Race-conscious affirmative action programs necessarily have some impact on nonminority employees. In *DPOA I* the Court of Appeals for the Sixth Circuit declared

> [C]oncern for the interests of white employees cannot be allowed to thwart achievement of the state's goals. It is reasonable for some persons innocent of wrongdoing to bear some burden in or-

der to correct the harsh effects of a grievous wrong of constitutional dimensions and enhance public safety by improved law enforcement.

608 F.2d at 696. In *Bratton* the Sixth Circuit warned that "remedial race-conscious programs ... must not be held hostage by those who claim to be adversely impacted unless they can demonstrate a *constitutionally impermissible stigma.*" 704 F.2d at 891 (emphasis in original).

According to the Supreme Court, whether the impact is unacceptable depends on several factors, including: whether the program allows substantial opportunities for selection and/or advancement of nonminority employees; whether the program results in the layoff or discharge of nonminority employees; and whether the program results in the selection or advancement of qualified individuals. *Paradise,* 480 U.S. at 182–83, 107 S.Ct. at 1072.

In *Paradise* the Supreme Court upheld as constitutional the use of a one-for-one black/white ratio for promotions in the Alabama Department of Public Safety. The Court determined that use of such a measure in *promotions* did not impose burdens comparable to use of racial preferences in *layoffs* which concerned the plurality in *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). The Court held that the one-for-one requirement

> only postpones the promotions of qualified whites. Consequently, like a hiring goal, it 'impose[s] a diffuse burden, ... foreclosing only one of several opportunities.' [*Wygant* ], at 283. 'Denial of a future employment opportunity is not as intrusive as loss of an existing job,' [citations omitted] and plainly postponement imposes a lesser burden still.

*Paradise,* 480 U.S. at 183, 107 S.Ct. at 1072.

Unlike a layoff preference, Detroit's program has not foreclosed white officers from the opportunity to be promoted or caused white officers to lose employment. Indeed, it is undisputed that since the pro-

gram's inception, 362 white male officers have been promoted to sergeant.

In addition, plaintiffs claim that Detroit's program impermissibly impacts white officers in that some officers have been passed over more than once. Plaintiffs' Brief in Support of Motion for Summary Judgment, p. 18. The fact that a small number of white officers has been passed over twice, and a very small number more than twice, does not distinguish this case from *Baker/Bratton,* in which the identical objection was made. Attachment 1 to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. The Sixth Circuit held that the lieutenants' program did not unnecessarily trammel the interests of white officers. 704 F.2d at 892. The court finds that determination controlling in the present case.

### CONCLUSION

The court holds that there is no genuine issue of material fact that the Detroit Police Department's affirmative action goals were narrowly tailored to their remedial purpose. Plaintiffs have failed to distinguish the sergeants' promotional plan from the lieutenants' promotional plan which was upheld by the court of appeals. Therefore, summary judgment must be granted in favor of the defendants.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is DENIED.

A judgment in accordance with this order shall be entered with the clerk of the court.

SO ORDERED.