**DETROIT POLICE OFFICERS ASSOCIATION, William Morgan, Brian Brunett, Donald Prince, Individually and as Representatives of a Class, Plaintiffs,**

v.

**Coleman A. YOUNG, Mayor, City of Detroit, Philip G. Tannian, Chief, Detroit Police Department, Douglas Fraser, Susan Cooper, Charles Butler, Edward Littlejohn, Alexander Ritchie, Members of the Board of Police Commissioners, The City of Detroit, a municipal corporation, Defendants.**

Civil Action Nos. 74–71838, 75–71376.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 26, 1995.

Walter S. Nussbaum, Southfield, MI, Allan D. Sobel, Charlton & Bershad, Troy, MI, Stephen J. Hopkins, Googasian, Hopkins, Bloomfield Hills, MI, Casimir J. Swastek, Rubenstein Plotkin, Southfield, MI, for Detroit Police Officers Association.

Daniel B. Edelman, Washington, DC, Dennis Burnett, Detroit City Law Department, Detroit, MI, Elliot Hall, Detroit, MI, for Coleman A. Young, Phillip G. Tannian, City of Detroit.

## ORDER APPROVING PROPOSED SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(e)

GADOLA, District Judge.

Before the court is a proposed Settlement Agreement negotiated by the parties in this twenty-year old dispute. The matter comes to this court upon the parties' joint motion for remand from the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"). The Settlement Agreement at issue was tentatively approved by this court on

June 23, 1995, and a hearing was conducted on September 19, 1995, to consider any objections by members of the plaintiffs' class to the terms of the settlement. As required by Federal Rule of Civil Procedure 23(e), this court must approve or reject the Settlement Agreement at issue. Upon due consideration of the objections voiced at that hearing and the history of this case, this court concludes that the Settlement Agreement reached by the parties in this matter is reasonable, adequate and fair. Accordingly, for the reasons stated below, this court approves the Settlement Agreement.

## I. Factual and Procedural Background

On June 10, 1974, the Detroit Police Officers Association ("DPOA") brought an action against the City of Detroit, Mayor Coleman A. Young, the Board of Police Commissioners, its individual members and the Chief of Police, alleging that the Detroit Police Department's voluntary program of racial preferences in the promotion from patrolman to sergeant adopted on July 31, 1974 ("the Plan"), violated various federal and state constitutional provisions and civil rights statutes. On July 22, 1975, William Morgan, Brian Brunett and Donald Prince filed a complaint individually and as representatives of a class against the same defendants similarly alleging that the Plan violated state and federal statutory and constitutional provisions.[1]

The Plan was one of several measures taken by Detroit's Board of Police Commissioners to increase black representation at all levels of the Department and thereby eliminate the remaining effects of past discrimination by the Department in hiring and promotion. To achieve this purpose, the Plan used a 50/50 black-white promotion formula. Specifically, under the Plan, all candidates for promotion were ranked according to their promotional score calculated from a written exam, service ratings, an oral interview, seniority, veteran's points and higher education. Prior to the inception of the Plan, all promotions were made in rank order. The Plan provided that candidates were to be coded according to race and sex, and black and white male officers were to be promoted in equal numbers. The Plan was to terminate when representation of blacks at the rank of sergeant reached 50% and it was applied to promotions made by the Department at various times from 1974 until May of 1989.[2]

The above cases were consolidated for trial and the matter was tried initially before Judge Kaess between August 8, 1977 and December 22, 1977. In a memorandum opinion dated February 27, 1978, Judge Kaess found that the Plan violated the plaintiff's rights under both state and federal law. *Detroit Police Officers Association v. Young*, 446 F.Supp. 979 (E.D.Mich.1978). The defendants appealed to the Sixth Circuit which reversed the district court, vacated the judgment and injunction, dismissed plaintiffs' statutory claims, and remanded "for further consideration of the constitutional issues." *Detroit Police Officers' Association v. Young*, 608 F.2d 671, 697 (6th Cir.1979) ("*DPOA I* "). The Supreme Court denied certiorari on June 15, 1981. *Detroit Police Officers' Association v. Young*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981).

On remand, the defendants moved for summary judgment on the ground that plaintiffs were collaterally estopped from raising a constitutional challenge by the Sixth Circuit decision in *Bratton v. City of Detroit*, 704 F.2d 878 (6th Cir.1983), *modified*, 712 F.2d 222 (6th Cir.1983), which upheld the validity of a similar program giving preference to black sergeants seeking promotion to the rank of lieutenant. The district court granted summary judgment to defendants. *Detroit Police Officers Association v. Young*, 36 F.E.P. Cases 1019, 1984 WL 21763 (E.D.Mich.1984).

---

1. The class was certified on November 18, 1976 by Judge Fred Kaess to include:

   All past, present and future qualified white Detroit Police Officers below the rank of Sergeant who, since April of 1974, have been or will be denied, because they are white, their timely promotions to the rank of Sergeant.

2. In its Report of the Status Conference and Order Regarding Further Disposition of the Case, dated August 25, 1993, this court noted that the parties had agreed that no promotions under the Plan have occurred since May of 1989.

On July 29, 1987, the Sixth Circuit affirmed the grant of summary judgment on the question of whether the City of Detroit's past intentional discrimination constituted a sufficient basis for the institution of an affirmative action program. *Detroit Police Officers' Association v. Young*, 824 F.2d 512 (6th Cir.1987) ("*DPOA II*"). *Bratton*, the court held, had conclusively determined that the defendants had a compelling interest in eliminating the effects of past discrimination. The court, however, disagreed with the district court's conclusion that the particular promotion ratio and end goals were narrowly tailored to their purpose and remanded the case for further proceedings to assess the "reasonableness" of the Plan. *Id.*

In November and December of 1990, defendants and plaintiffs filed motions for summary judgment on the issue of reasonableness of the Plan. On July 10, 1991, this court granted defendant's motion for summary judgment, concluding that the Plan's goals were narrowly tailored to their remedial purpose. *Detroit Police Officers Association v. Young*, 765 F.Supp. 393 (E.D.Mich. 1991).

On March 24, 1993, the Sixth Circuit reversed that decision, holding that the Plan had lasted longer than necessary and was thus not sufficiently tailored to satisfy the Fourteenth Amendment. *Detroit Police Officers Association v. Young*, 989 F.2d 225, 228 (6th Cir.1993) ("*DPOA III*"). The Sixth Circuit noted that, at the time of oral argument on August 12, 1992, the proportion of black sergeants was virtually fifty percent. *Id.* at 227, n. 1.[3] Accordingly, the Sixth Circuit held that the Plan's goal of 50% black (and minority) sergeants had been "virtually attained" and that it was no longer narrowly

tailored to. serve the compelling interests that it once did in light of "the changed circumstances of almost two decades." *Id.* at 228. Concluding that the nineteen year term of the plan had been "excessive" and had "worked substantial hardship upon the plaintiffs," the Sixth Circuit remanded the case "for a determination of relief, if any, to which the plaintiffs, or their counsel, may be entitled." *Id.*

At a Status Conference held by this court on August 25, 1993, the parties agreed to file a Stipulation of Fact which included a month by month breakdown of the proportionate representation of black and white sergeants in the Department from July 29, 1987 through August, 1993 and a list of the white officers who had been passed over for promotion since the Plan had been instituted. The court noted that the parties agreed that no promotions had been made under the Plan after May, 1989.

On October 25, 1994, the plaintiffs filed motions requesting relief and attorneys fees. Specifically, the plaintiffs claimed that all of the 291 officers passed over for promotions under the Plan since its inception in 1974 were entitled to relief. Alternatively, the plaintiffs requested relief for all officers passed over after October 31, 1987, the date that plaintiffs' expert witness, Dr. Farrell Bloch determined the Plan ceased to be narrowly tailored (i.e. it met its goal of 50% representation).[4] The plaintiffs also moved for attorneys fees, contending that they were "prevailing parties" for purposes of 42 U.S.C. § 1988 in light of the Sixth Circuit's decision in *DPOA III*.

The defendants filed a response on November 22, 1993, contending that the plain-

---

**3.** This court made no specific findings in its 1991 Order Granting Defendants' Motion for Summary Judgment concerning the proportion of black sergeants in the Department. *See Detroit Police Officers Association v. Young*, 765 F.Supp. 393 (E.D.Mich.1991). This court did determine upon remand from *DPOA III*, however, that black representation at the rank of sergeant had been only 40.5% when promotions were last made under the Plan in May, 1989. *See Detroit Police Officers Association v. Young*, 850 F.Supp. 572 (E.D.Mich.1994) (accepting the Report and Recommendation of Magistrate Judge Steven D. Pepe).

**4.** Dr. Bloch, the plaintiffs' expert, estimated that if there had been no discrimination, the expected number of black sergeants in the Department as of October 31, 1987 would have been 256. Compared to the actual number of black sergeants on that date (292), Dr. Bloch concluded that the discrimination proven in *Bratton* was remedied prior to October 31, 1987. Accordingly, the plaintiffs' submitted that the Plan was unconstitutional from that date forward.

tiffs were not entitled relief because the Plan was applied constitutionally in each instance when promotions were made. Moreover, the defendants argued that the plaintiffs were not entitled to an award of attorneys fees because they did not prevail on any aspect of the merits of their original claim.

This court issued an order referring the matter to Magistrate Judge Steven D. Pepe, who issued a Report and Recommendation on February 2, 1994, flatly rejecting plaintiffs' requests for relief and attorneys fees. In his report, Magistrate Judge Pepe concluded that all of the 291 officers passed over for promotion since 1974 were not entitled to relief because the Plan was not unconstitutional from its inception, but rather from the date that the goal of 50/50 representation was substantially achieved. In support of his holding, Magistrate Judge Pepe noted that *DPOA III* did not disturb this court's specific finding that the 50% goal was constitutionally permissible. *See Detroit Police Officers Association v. Young*, 765 F.Supp. 393, 396–98 (E.D.Mich.1991) (this court's 1991 Order Granting Defendants' Motion for Summary Judgment). Moreover, Magistrate Judge Pepe noted that the Stipulation of Facts submitted by the parties following the August 25, 1993 Status Conference demonstrated that the disparity between white and black sergeants did not fall below 1 percent until June 30, 1992. Accordingly, the Plan was sufficiently tailored to avoid constitutional scrutiny at the very least until sometime in 1992. Because the last promotion under the Plan had occurred in May 1989, three years before the Plan ceased to be narrowly tailored, Magistrate Judge Pepe held that no identified individual was injured by the continued application of the Plan until March 24, 1993, when the Sixth Circuit ended it. None of the plaintiffs, therefore, were entitled to relief.[5]

Magistrate Judge Pepe similarly rejected plaintiffs' claim for attorneys fees, reasoning that the Plan was not held to be unconstitutional at any point prior to the attainment of its stated goal. The Report and Recommendation interpreted the Sixth Circuit's holding in *DPOA III* that the goal of 50% black (and minority) sergeants had been "virtually attained" as a recognition that the Plan's goals had been substantially attained. As such, the *DPOA III* holding did not alter the legal relationship between the parties or make the plaintiffs a "prevailing party" for purposes of awarding attorneys fees.[6]

On March 31, 1994 this court entered an order adopting Magistrate Judge Pepe's Report and Recommendation, denying plaintiffs' motions for relief and attorneys fees and defendants' request for relief. *Detroit Police Officers' Association v. Young*, 850 F.Supp. 572 (E.D.Mich.1994) (publishing the full text of Magistrate Judge Pepe's February 2, 1994 Report and Recommendation). The plaintiffs filed a notice of appeal to the Sixth Circuit on April 22, 1994. On September 8, 1994, during the pendency of that appeal, the parties jointly moved for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure after reaching a proposed settlement of the case. This court granted that motion on September 30, 1994 and the Sixth Circuit remanded the case to this court on December 7, 1994.

On June 23, 1995, this court entered an order tentatively approving a proposed Settlement Agreement and Form of Notice prepared by the parties, and scheduled a hear-

---

**5.** Magistrate Judge Pepe also rejected plaintiffs' argument that officers who were passed over for promotion more than once were entitled to relief because the Plan had worked a substantial hardship on them. The Magistrate Judge concluded that although the harm to these individuals was real and unfortunate, it did not render the Plan unconstitutional.

**6.** Magistrate Judge Pepe concluded:

While it is true that defendants can no longer use the same promotion criteria used under the Plan, this was the result of recent objective measurement of racial ratios under the Plan,

and not a product of the complaints or other pleadings filed by plaintiffs since 1974. The Plan ended when it substantially met its own terms. At that point, after this fact was, in effect, acknowledged by defense counsel at oral argument, the Sixth Circuit declared it terminated. Plaintiffs' claims for almost 20 years the Plan was unconstitutional have repeatedly been rejected. The Plan itself was constitutional . while it affected substantial change in the surrounding circumstances to achieve its goal.

ing on September 19, 1995 to consider any objections to the Settlement Agreement.

In pertinent part, the Settlement Agreement provides:

A. *Additional Retirement Benefits*

The tentative settlement will provide additional retirement benefits to eligible white officers. Officers eligible for additional retirement benefits are those passed over for promotion for sergeant through the operation of the affirmative action program incident to promotions in August 1988 and/or May 1989 who remain employed in the Department at such time as the settlement is approved by the District Court pursuant to *Fed.R.Civ.P. Rule 23(e)* and who have not as of the date of the District Court's approval of the Agreement otherwise been promoted to the rank of sergeant. An eligible officer will have the option of receiving retirement benefits calculated either as if he: (a) were promoted to sergeant on the date the settlement is approved in the District Court; or (b) were promoted to the rank of investigator on the date he was passed over for promotion to sergeant (i.e., the earlier of August 1988 or May 1989).

B. *Attorney's Fees*

Defendants will pay attorney's fees in the amount of $85,000 to the DPOA and $65,-000 to the attorneys for the class represented by the individual named Plaintiffs. Defendant City of Detroit agrees to make payment of the attorney's fees and expenses within 45 days of the date approval of the settlement becomes final i.e., after the conclusion of appellate review or the opportunity therefor.

C. *Termination of Program*

The parties agree that the affirmative action program is terminated, its 50% end-goal having been achieved.

Since the June 23, 1995 Order, this court has received 29 letters from members of the class objecting to the proposed settlement. According to the Brief in Support of the Proposed Settlement submitted on September 14, 1995, by counsel for the plaintiffs' class, thirty-five members have filed statements objecting to the class.[7] The objections raised by these individuals are all premised in the belief that the plaintiffs successfully proved that the Plan unconstitutionally discriminated against the class. These objections do not challenge the basic fact that the courts have upheld the Plan throughout the litigation and that this court has held that none of the class members are entitled to relief. They merely object that they do not fall within the definition of eligible officer in the Settlement Agreement.[8] Accordingly,

---

**7.** Plaintiffs' class counsel has grouped these objectors into roughly four categories. The first are officers and sergeants passed over for promotion prior to August, 1988 and May, 1989 who seek enhanced retirement benefits. This group includes Frank S. Alessi, Pasquale Alessi, Donald Drake, David Mallory, Paul C. Leonard, William B. Lamb, Patrick H. Murray, Derald Raycraft, Michael B. Rudzis, Kenneth M. Smith and Rodney Hudson. This group would also include Hadley G. Yoakum and Thomas W. Krantz who have filed objections which may be understood as indicating a choice to opt out.

The second are officers who were passed over for promotion in August, 1988 and/or May 1989 but who were subsequently promoted to sergeant, seeking to have the proposed settlement revised to provide enhanced retirement benefits calculated as of the date they were passed over for promotion or some form of monetary relief. This group includes Patrick M. Henahan, Timothy M. Malone, Patrick Carney, Gary Sroka, Mark Livingston, Robert French, Richard L. Vauris, and Clarence A. Malesky.

A third group is comprised of investigators who seek to have the proposed settlement revised to provide enhanced retirement benefits calculated as if they made sergeant in May, 1989. This group includes Gregory Felczak and Douglas Chambers.

Finally, there are several officers who were passed over for promotion in August, 1988 and/or May 1989 and who either retired or are on duty disability leave, who seek to modify the settlement to render them eligible for enhanced retirement benefits. This group includes Dennis P. Bielskis, Donald R. Broughton, Daniel F. Bryant, Michael T. Dwyer, Timothy M. Miller, Ronald C. Parrot, Norman Sieloff, John Sweeney, William Vitoratos and Leslie Hutsko. This group is represented by attorney David M. Parrot, who filed an objection on behalf of the group.

**8.** According to the estimate of counsel for the plaintiffs' class, as of today, only 11 of the original 291 officers passed over for promotion under the Plan are eligible to obtain the enhanced retirement relief called for in the Settlement Agreement.

they consider the proposed settlement unreasonable, inadequate and unfair.

## II. Analysis

■ Federal Rule of Civil Procedure 23(e) provides that a class action may not be compromised or settled without the approval of the court. A district court should approve a settlement if it is "fundamentally fair, adequate and reasonable" in light of the circumstances of the case. *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir.1990); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986). Approval of a proposed settlement is committed to the sound discretion of the trial court and the order approving a settlement will not be disturbed absent an abuse of discretion. *Bailey*, 908 F.2d at 42.

■ Factors relevant to determining whether a proposed settlement is fair, adequate and reasonable include "the likelihood of success on the merits, the risk associated with and the expense and complexity of litigation, and the objections raised by class members." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). The district court enjoys wide discretion in assessing the weight and applicability of these factors. *Id.* at 1205–06. This discretion to weigh the relevant factors does not, however, permit the court to modify the terms of a negotiated settlement. *Evans v. Jeff D.*, 475 U.S. 717, 727, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but ... does not authorize the court to require the parties to accept a settlement to which they have not agreed.") Accordingly, Rule 23(e) is meant to protect class members "whose rights may not have been given due regard by the negotiating parties," not to authorize the court to provide them with an opportunity to renegotiate their settlement. *See Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 624 (9th Cir.1982). This court may only approve or disapprove the settlement proposal.

■ Considering the above listed factors and the objections raised at the September 19, 1995 hearing, this court has determined that the proposed Settlement Agreement is fundamentally fair, adequate and reasonable. As the factual and procedural background of this case reveals, this case has been vigorously litigated for over twenty years, including three successive appeals to the Sixth Circuit. The Plan was finally terminated according to its own terms on March 24, 1993 when the Sixth Circuit declared that the 50% goal had been virtually attained. Since that time the only issue remaining in this case has been the amount of relief, if any, to which the plaintiffs' are entitled. As the Report and Recommendation of Magistrate Judge Pepe adopted by this court on March 31, 1994 clearly decided, none of the class members were entitled to relief, as the Plan remained narrowly tailored to its compelling interest of eliminating the effects of past discrimination through the time promotions were last made under it in May, 1989. The proposed Settlement Agreement represents a fair and reasonable resolution of this protracted litigation.

The Settlement Agreement is the result of nearly ten months of negotiations by the parties at various times between 1992 and 1995 under the auspices of the Sixth Circuit's Settlement Office. It is the product of considerable discovery and is consistent with the trial record and appeal history of this case. This court is satisfied that the proposed Settlement Agreement adequately protects the interests of the named and unnamed plaintiffs from any fraud or collusion, as Rule 23(e) directs. *See Granada*, at 1205. Moreover, the Agreement is reasonable in light of the this court's holding that none of the class members were entitled to relief. Indeed, absent this Agreement, there would be no relief for any member of the plaintiff class.

■ This court recognizes that those officers who are not eligible for the enhanced retirement benefits provided in the Agreement have suffered a real and unfortunate injury from the imposition and nineteen year duration of the Plan. The fact that the Settlement Agreement does not provide a remedy for these injuries does not, however,

render it unreasonable.[9] As the Sixth Circuit recognized earlier in this litigation:

> It is reasonable for some persons innocent of wrongdoing to bear some burden in order to correct the harsh effects of a grievous wrong of constitutional dimensions and enhance the public safety by improved law enforcement. *DPOA I,* 608 F.2d at 696.

In light of the foregoing discussion, the "excessive" length of this epic litigation and the need to resolve an issue which effectively resolved itself on May 24, 1993 when the Sixth Circuit reiterated that the Plan had terminated on its own terms, this court concludes that the Settlement Agreement proposed by the parties is fair, adequate and reasonable, and meets the standards of Rule 23(e). The Settlement Agreement is hereby approved.

### ORDER

Therefore, it is hereby **ORDERED** that the Settlement Agreement filed on July 31, 1995 is **APPROVED.**

**SO ORDERED.**

---

9. This court commends those officers who forcefully and eloquently presented their objections to the Agreement at the hearing conducted on September 19, 1995 for their service and commitment to the City of Detroit. Although acknowledgment of their achievements and dedication will likely come as only a small consolation for the hardships they have endured throughout this litigation, it is, regrettably, the only consolation that the constitution and the laws of the United States afford.